IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRELL LATTISAW                              *

                                              *     CIVIL ACTION NO. CCB-13-2015
v.

                                              *

D.O.C. Medical, et al.

                                              *
                                           ******

## MEMORANDUM

Pending are dispositive motions filed on behalf of defendants Eastern Correctional Institution, D.O.C. Medical, and Jean Brutus, DDS.  (*See* ECF Nos. 16, 19, & 21.)  Plaintiff Darrell Lattisaw has responded.  (*See* ECF Nos. 24-26.)[1]  Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.  *See* Local R. 105.6.  For the reasons stated below, the defendants' dispositive motions will be granted.[2]

## Background

On July 11, 2013, Lattisaw, who is incarcerated at the Eastern Correctional Institution ("ECI"), filed a self-represented complaint, which was later supplemented.  (*See* ECF Nos. 1 & 7.)  He claims that he went to the dentist, Dr. Brutus, who extracted his bottom left tooth and, "with a hard blow [] broke [his] upper teeth."  (ECF No. 1 at 3.)  Lattisaw claims that he asked the dentist to fix his teeth but Brutus refused to do so, desiring instead to remove all of Lattisaw's teeth and refusing to let him see another dentist.  (*See id.*; *see also* ECF No. 7 at 4.)  Finally, he states that he is in pain.  (*See* ECF No. 1 at 3; *see also* ECF No. 7 at 4.)

---

[1] In his opposition, Lattisaw claims that Dr. Fisher was not licensed to practice dentistry and broke his jaw while extracting his teeth.  (*See* ECF Nos. 24-26.)  Fisher was not named as a party to these proceedings and has not been served with the complaint.  Accordingly, any claims against Fisher are not properly before the court and will not be considered.
[2] The pending motion for extension of time, (ECF No. 18), is granted nunc pro tunc.

Lattisaw's uncontroverted dental records reflect that on July 27, 2011, he was evaluated by Scott Nichols, DDS, who diagnosed him as suffering from moderate to severe periodontal disease and observed mobility in several teeth.  (ECF No. 16, Ex. 5, at 16-17.)  Nichols advised Lattisaw that he needed to work harder on his oral hygiene and advised him to have tooth 28 extracted.  (*Id.*)  Lattisaw was called for the extraction of tooth 28 on September 8, 2011, but refused to be treated.  (*Id.* at 28.)

On December 21, 2011, Nichols evaluated Lattisaw again.  (*Id.* at 18.)  He advised the dentist that he knew tooth 28 needed to be extracted but was not ready to undergo the procedure. (*Id.*)  Nichols advised Lattisaw that teeth 12 and 13 also required extraction and that he could prescribe more medication but the teeth needed to be removed soon.  (*Id.*)  Lattisaw was provided antibiotics and Tylenol for pain relief.  (*Id.*)

Lattisaw was next examined on September 19, 2012.  (*Id.* at 19, 25-26.)   After examination, it was recommended that teeth 12, 13, 18, and 28 be extracted.  (*Id.*)

On November 7, 2012, Lattisaw was seen by Brutus for extraction of tooth 18.  (*Id.* at  20, 30.)  After the procedure, Lattisaw was provided an antibiotic and Motrin for pain relief.  (*Id.* at 20.)

On November 15 and 19, 2012, Lattisaw submitted sick call slips seeking "oral-gel" to alleviate mouth pain, which he attributed to Brutus pulling his teeth out with too much force and hurting his top teeth.  (*Id*. at 12-13.)  He was evaluated on November 15 and 28, 2012, due to complaints of pain following his tooth extraction.  (*Id.* at 23-24.)  On November 15, 2012, it was noted that he was scheduled to have teeth 12 and 13 extracted.  (*Id.* at 24.)  Upon examination on November 28, 2012, Lattisaw pointed to teeth 12 and 13 as being the source of his pain.  (*Id.* at

23.)  He was diagnosed as suffering from irreversible pulpitis, and it was noted that he had already been prescribed antibiotics and pain medication.  (*Id.*)

On December 13, 2012, and January 11, 2013, Lattisaw again refused to have teeth 12 and 13 extracted despite being advised of the risks of this decision.  (*Id.* at 6-7, 23.)

On February 28, 2013, Lattisaw again refused, despite dental recommendations, to have the same teeth extracted.  (*Id.* at 5, 21.)  He stated that he was not having difficulty eating and knew to submit a sick call slip when he was ready to have the teeth extracted.  (*Id.*)  On July 31, 2013, Lattisaw refused to appear for his dental appointment.  (*Id.* at 33.)

On September 7 and 16, 2013, Lattisaw submitted sick call slips stating that he was bleeding from the mouth and that his face was swollen due to injury caused by Brutus.  (*Id.* at 10-11.)  On September 16, 2013, he was evaluated by dental staff with a focus on teeth 12 and 13. (*Id.* at 22, 33.)  Tooth 12 was abscessed but otherwise the diagnosis regarding the decay of teeth 12 and 13 remained the same.  (*Id.*)  Lattisaw was provided antibiotics and Motrin for pain relief. (*Id.*)

On December 27, 2013, Lattisaw was evaluated and  again refused to have teeth 12 and 13 extracted.  (*Id.* at 3, 32.)  He also refused all other dental treatment.  (*Id.*)

Lattisaw underwent his annual dental exam on January 23, 2014.  (*Id.* at 35-40; *id.*, Ex. 3, at 9-14.)  X-rays were taken and a plan of treatment developed which required the extraction of numerous teeth due to periodontal disease.  (*Id.*, Ex. 5, at 35-40; *id.*, Ex. 3, at 4, 9-14.)  Lattisaw was given the results of the examination and advised of the treatment plan.  (*Id.*, Ex. 3, at 5-6.) He was also told that his refusal to undergo necessary dental work was holding up his treatment plan.  (*Id.*)  Lattisaw was prescribed antibiotics and was advised that, before he could receive partial plates, he needed to complete all of his treatment, including extractions, restorative work,

dental hygiene scaling appointments, and demonstration of proper oral hygiene.  (*Id.*)  On January

30, 2014, Lattisaw consented and had two teeth extracted by Nichols.  (*Id.* at 3, 7-8.)

**Standards of Review**

### A.     Motion to Dismiss

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being made

against him, they also provide criteria for defining issues for trial and for early disposition of

inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "The mere

recital of elements of a cause of action, supported only by conclusory statements, is not sufficient

to survive a motion made pursuant to Rule 12(b)(6)."  *Walters v. McMahen*, 684 F.3d 435, 439

(4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to

dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence

sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient

facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted).

"Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is

'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to

plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.      Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added).  Whether a fact is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**Analysis**

**A.  D.O.C. Medical**

To sustain an action under 42 U.S.C. § 1983, the plaintiff must demonstrate that: (1) he suffered a deprivation of  rights secured by the Constitution of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  There is no legal entity named "D.O.C. Medical."  Because

defendant "D.O.C. Medical" is not a "person" subject to suit or liability under §1983, Lattisaw's complaint against that defendant shall be dismissed.

### B. ECI

Under the Eleventh Amendment, a state, including, its agencies and departments, is immune from federal lawsuits brought by its citizens or the citizens of another state, absent consent. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Global Mail Ltd. v. U.S. Postal Serv*., 142 F.3d 208, 210 (4th Cir. 1998) ("Sovereign immunity deprives a court of jurisdiction to hear a case."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Lattisaw's complaint against ECI, an agency within the State of Maryland, is barred by the Eleventh Amendment, and it will be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### C. Brutus

As interpreted by the Supreme Court, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). In the context of denial of medical care, an Eighth Amendment violation arises when the actions of the defendants, or their failure to act, amount to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either

provide it or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that society does not expect that prisoners will have unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.  The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *See Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Virginia Beach Corr.  Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citation and internal quotation marks omitted).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.  The reasonableness of the defendant's actions taken must be judged in light of the risk that he knew.  *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference . . . ." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).  Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge requirement is not met.  *Id.* at 169 (reasoning that actions inconsistent with an effort to hide a serious medical condition refute the presence of  subjective knowledge).  Mere disagreement with a prescribed course of treatment

is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (concluding that, where a prisoner was under constant medical supervision, his claims did not rise to the level of deliberate indifference).

Lattisaw fails to allege facts to plausibly support that Brutus was subjectively aware of a serious medical need to which he responded inappropriately. Lattisaw's mere disagreement with the prescribed course of treatment for his periodontal disease and dental hygiene is insufficient to establish an Eighth Amendment claim of deliberate indifference.[3] *See id.* Moreover, to the extent Lattisaw claims that Brutus was negligent in breaking his top tooth while extracting a bottom tooth, such a claim is also insufficient to sustain an Eighth Amendment claim. *See Johnson*, 145 F.3d at 166.[4] Accordingly, Brutus's motion to dismiss will be granted.

## Conclusion

For the reasons stated, the defendants' dispositive motions shall be granted. A separate Order follows.

July 22, 2014                                            /s/
Date                                            Catherine C. Blake
                                                United States District Judge

---

[3] In any event, Lattisaw's dental records demonstrate that he has received constitutionally adequate medical care. He was seen regularly by dental staff who examined his mouth, teeth, and gums, and provided a variety of care, including cleaning, x-rays, development of a treatment plan, and education regarding oral hygiene. The record also shows that Lattisaw is regularly non-compliant with his dental care, refusing to consent to the recommended treatment. There is simply no evidence that any dental provider, including Brutus, was deliberately indifferent to Lattisaw's medical needs.
[4] There is no evidence before the court that any of Lattisaw's top teeth were broken. To the contrary, he was advised as early as December 2011 to have those teeth extracted, and he disregarded that recommendation for over two years.